IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

AHMAD BARTON and DAWN           )
BARTON,                          )
                                 )
        Plaintiffs,              )
                                 )
v.                               )          CASE NO. CV419-017
                                 )
HAI FENG 1710 DESIGNATED and )
HAPAG-LLOYD AG,                  )
                                 )
        Defendants.              )
_____ )

## O R D E R

Before the Court is Defendants Hai Feng 1710 Designated
and Hapag-Lloyd AG's Daubert Motion to Exclude Testimony of
Rich Galuk. (Doc. 41.) For the following reasons, Defendants'
motion (Doc. 41) is **GRANTED**.

### BACKGROUND

This case arises from an injury Plaintiff Ahmad Barton
received while working as a longshoreman on the M/V Vienna
Express. (Doc. 33 at ¶¶ 8-13.) On September 12, 2018, the M/V
Vienna Express (the "Vessel") called at the Port of Savannah
to load and discharge containerized cargo. (Doc. 44 at ¶ 2;
Doc. 49 at ¶ 2.) The Vessel is a foreign flag container vessel
which transports intermodal container cargo. (Doc. 44 at ¶ 1;
Doc. 49 at ¶ 1.) At all times relevant to this action the

Vessel was owned by Defendant Hai Feng 1710 Designated and managed by Defendant Hapag-Lloyd AG. (Doc. 44 at ¶ 1; Doc. 49 at ¶ 1.)

Plaintiff Ahmad Barton was employed as a longshoreman by Ceres Marine Terminal, Inc., a stevedoring company with operations in the Port of Savannah. (Doc. 44 at ¶ 1; Doc. 49 at ¶ 1.) Barton was one of the International Longshoremen Association members hired to assist with the cargo operations on the Vessel. (Doc. 44 at ¶ 2; Doc. 49 at ¶ 2.)

In order to unload cargo on the Vessel, Barton was required to unfasten the AllSupport lashing rods which secured the cargo during transport. (Doc. 33 at ¶ 13; Doc. 44 at ¶ 3; Doc. 49 at ¶ 3.) While unlashing a container, Barton was unable to successfully release the end of an AllSupport from the container's corner casting. (Doc. 44 at ¶ 3; Doc. 49 at ¶ 3.) When Barton attempted to release the AllSupport a second time the AllSupport released "unexpectedly" and "too easily." (Doc. 44 at ¶ 4; Doc. 49 at ¶ 4.) As a result of the AllSupport's sudden release, the AllSupport slipped out of Barton's right hand and fell on his left hand, allegedly causing him significant injuries. (Doc. 44 at ¶ 18; Doc. 49 at ¶ 18.)

The AllSupport involved in Barton's accident remained in service for nine and a half months after the accident before being removed from the Vessel in June 2019 for inspection. (Doc. 44 at ¶ 11; Doc. 49 at ¶ 11.) On June 26, 2019, an inspection of the AllSupport was conducted in controlled conditions at defense counsel's office. (Doc. 44 at ¶ 14; Doc. 49 at ¶ 14.) During the inspection, a 1.5-degree bend was discovered on the end of the relevant AllSupport. (Doc. 44 at ¶ 14; Doc. 49 at ¶ 14.) In his report of the inspection, Plaintiffs' expert Rich Galuk wrote that, "[o]n the ball joint end (L)[,] the threaded portion of rod appears to be bent [] which would put AllSupport in a bind and [sic] difficult to disconnect from container."[1] (Doc. 40, Attach. 3 at 270.)

In the amended complaint, Barton alleges that Defendants were negligent because they failed to exercise reasonable care to maintain the AllSupport in safe condition. (Doc. 33 at ¶ 19.) Plaintiff Dawn Barton, Barton's spouse, brings claims for loss of consortium as a result of Barton's injuries. (Doc. 33 at ¶¶ 25, 28.) Both Plaintiffs and Defendants have retained experts to testify on the condition of AllSupport at the time of the accident. (See generally,

---

[1] During deposition, Galuck explained that "ball joint end (L)" refers to the left end of the AllSupport rod.

Doc. 40, Attach's 3, 4, 5.) At issue in this order is Galuk's
testimony regarding the bend in the AllSupport and whether
the bend contributed to Barton's injury.

### STANDARD OF REVIEW

The admission of expert testimony is controlled by
Federal Rule of Evidence 702:

> A witness who is qualified as an expert by
> knowledge, skill, experience, training, or
> education may testify in the form of an opinion or
> otherwise if:
>
> (a)  the expert's scientific, technical, or other
>      specialized knowledge will help the trier of
>      fact to understand the evidence or to
>      determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or
>      data;
>
> (c)  the testimony is the product of reliable
>      principles and methods; and
>
> (d)  the expert has reliably applied the principles
>      and methods to the facts of the case.

The trial judge is assigned "the task of ensuring that an
expert's testimony both rests on a reliable foundation and is
relevant to the task at hand." Daubert v. Merrell Dow Pharm.,
Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d
469 (1993). "As the Supreme Court made abundantly clear in
Daubert, Rule 702 compels district courts to perform the
critical gatekeeping function concerning the admissibility of

expert scientific evidence." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (internal quotation marks and citation omitted). This gatekeeping function equally applies to the admissibility of expert technical evidence. Id.; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49, 119 S. Ct. 1167, 1174-75, 143 L. Ed. 2d 238 (1999). The Eleventh Circuit Court of Appeals has explained that district courts fulfill that function by engaging in a three-part inquiry, considering whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as to be determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific . . . expertise, to understand the evidence or to determine a fact in issue.

Frazier, 387 F.3d at 1260. While there will often be some overlap between these concepts of qualification, reliability, and helpfulness, they are distinct concepts that courts should be careful not to conflate. Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir.2003). The burden of establishing that these requirements are met rests with the proponent of the expert testimony, and not the Daubert challenger. McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir.2002).

**ANALYSIS**

Defendants move the Court to exclude the testimony of Plaintiffs' expert Rich Galuk. Plaintiffs intend to proffer Galuk as an expert witness to testify regarding his inspection of the AllSupport, the 1.5-degree bend he discovered in the AllSupport, and the likelihood that the bend contributed to Barton's injury. (Doc. 50 at 5.) Defendants argue (1) that Galuk is not competent to offer any expert testimony in this case; and (2) that the opinions he offers do not meet the standards for reliability established by Daubert. (Doc. 41, Attach. 1 at 2.)

In response, Plaintiffs first argue that Galuk's decades of experience "inspecting, repairing, and maintaining marine vessels and equipment" qualify him to opine regarding the functionality of the AllSupport. (Doc. 50 at 8-10.) Next, Plaintiffs contend that Galuk employed reliable principles and methods to reach his causation opinion. (Id. at 10.) As discussed below, the Court finds that Galuk is not qualified to give expert testimony on the functionality of the AllSupport, and, even if he were, the methods and principles Galuk employed to form his opinion do not meet the reliability standards of Daubert.

I.   QUALIFICATIONS

The Court must first consider whether Galuk possessed the necessary "knowledge, skill, experience, and training" to qualify as an expert in this case. Fed. R. Evid. 702. "When an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliable applied to the facts.' " Payne v. C.R. Bard, Inc., 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting Frazier, 387 F.3d at 1261). In this case, Plaintiffs have not demonstrated that Galuk's experience is a sufficient basis for his opinions concerning the AllSupport.

Plaintiffs contend that Galuk is qualified to proffer expert testimony in this case based on his "nearly forty years' experience in inspecting, repairing, and maintaining marine vessels and equipment." (Doc. 50 at 8.) Plaintiffs highlight that Galuk "is a member of the Society of Naval Architects and Marine Engineers and holds certifications from the American Boat and Yacht Council in electrical, corrosion and vessel standards applicable to Coast Guard inspected vessels." (Id.) Plaintiffs also note that Galuk attended the Coast Guard's engineering school, where he received training

in, among other things, inspecting engine crankshafts for bends. (Doc. 50 at 9; Doc. 40, Attach. 3 at 45.)

After leaving the Coast Guard, Galuk worked as a chief engineer for the Savannah Bar Pilots. (Doc. 50 at 9.) In this role, Galuk was responsible for the maintenance and performance of the SBP's boats. (Id.) For the last nineteen years, Galuk has also worked as a marine surveyor through his businesses Select Marine Service, Inc. and Select Marine Surveying, Inc. (Id.) As a marine surveyor, Galuk has consulted on a "variety of problems with marine vessels, including damage to electrical systems, corrosion, repair of auxiliary systems such as air conditioning and sewage, engine and generator troubleshooting, and investigation of steering system malfunctions." (Id.; Doc. 40, Attach. 3 at 23-24.)

While the Court recognizes that Galuk has a long history working with marine vessels, almost none of his experience relates to container vessels, container lashing equipment, or intermodal containers like the type involved in this case.[2] By his own admission, Galuk has no experience surveying a cargo vessel like the M/V Vienna Express. (Doc. 40, Attach.

---

[2] According to Galuk, his only work experience aboard a container vessel involved overseeing the off-loading of a sailboat over seven years ago. (Doc. 40, Attach. 3 at 30-32.)

3 at 31-32.) Galuk has not obtained any certification or taken any class relating to securing equipment for intermodal containers. (Id. at 48-49.) Galuk's primary work as a marine surveyor involves the pre-purchase value survey of yachts. (Id. at 23-25.) Notably, all of Galuk's knowledge about the workings of the AllSupport came from informational videos he watched on YouTube in preparation for this case. (Id. at 60-61.)

Because Galuk's experiences with marine vessels are unrelated to the mechanics of cargo securing equipment, such as AllSupports, the Court finds that Galuk's is not qualified to opine on the functionality of the AllSupport in this case. United States v. Brown, 415 F. 3d 1257, 1269 (11th Cir. 2005) (upholding district court's refusal to qualify expert with Ph.D. in plant pathology who had only worked with the chemical substance at issue on "isolated projects"); Beam v. McNeilus Trauck and Mfg., Inc., 697 F. Supp. 2d. 1267, 1277 (excluding testimony of witness, in part, because he had no "training or experience in designing waste-hauling routes" "[o]ther than watching three hours of videos on 'YouTube' "); Wright v. Case Corp., No. Civ.A.1:03CV1618-JEC, 2006 WL 278384, *2-3 (N.D. Ga. Feb. 1, 2006) (disqualifying expert witness who "was not at all familiar with the mechanics of the loader

until he became involved in this lawsuit"). Accordingly, Defendants' motion (Doc. 40) is **GRANTED** and Plaintiffs are excluded from utilizing any testimony or opinion from Galuk relating to the condition of the AllSupport or its contribution to Barton's injuries.

## II. RELIABILITY

Even if Galuk were qualified to testify as an expert in this case, the Court finds the methods and principles he employed to reach his opinion do not meet the reliability standards of Daubert. When a court considers the reliability of a particular expert's opinion, it considers, to the extent possible, (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Quiet Tech. DC-8, Inc. v. Hurel-Dubois, UK, Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (citing McCorvey, 298 F.3d at 1256. These factors "do not constitute a definitive checklist or test." Kumho Tire, 526 U.S. at 150, 119 S. Ct. at 1175 (internal quotation marks and citation omitted). Rather, the applicability of these factors "depends upon the

particular circumstances of the particular case at issue."
Id.

In this case, Galuk's proffered opinion lacks any of the normal indica of reliability under Daubert. Galuk opines that the 1.5-degree bend in the AllSupport could have contributed to Barton's accident by making the AllSupport "difficult to disconnect from [the] container." (Doc. 50 at 5-6; Doc. 40, Attach. 3 at 270.) Galuk based his opinion entirely on his visual inspection of the AllSupport, a statement from the manufacturer that the AllSupport should not be used if it's bent, and his prior experience working with boat propeller shafts. (Doc. 40, Attach. 3 at 118-119, 123-124.) Galuk admits he did not conduct a test to discern what degree bend in an AllSupport would affect its functionality. (Id. at 118-119.) Further, Galuk did not speak to the manufacturer or anyone familiar with the AllSupport's dimensions in coming to his conclusion. (Id. at 119.) Lastly, Galuk's belief that a bend would have the same effect on boat shaft propellers as on the AllSupport is entirely speculative and is not based on any scientific method.

Plaintiffs contend that other courts have admitted expert testimony that relied on visual inspections. (Doc. 50 at 11.) However, in the cases cited by Plaintiff, the visual

inspection was more extensive or conducted by an expert with significant experience in the field at issue.[3] Godelia v. Zoll Servs, LLC., No. 16-60471-CIV-GAYLES, 2019 WL 3797632, at *3 (S.D. Fla. Aug. 13, 2019) (admitting opinion on defective soldering based on "10X magnified visual inspection" of cable by expert experienced in soldering); Sparger v. Newmar Corp., NO. 12-81347-CIV, 2014 WL 3928556, at *4 (S.D. Fla. Aug. 12, 2014.) (finding expert's methodology reliable where his opinion was based, in part, on his visual inspection of the RV engine combined with his prior experience as an automotive mechanic). Because Galuk has no experience with defective lashing equipment, the Court does not find his opinion, based solely on his visual inspection of the AllSupport and review of the manufacturer's manual, to be reliable. See Horton v. Maersk Line, Ltd., No. CV412-127, 2014 WL 7893191, at *4 (S.D. Ga. Sept. 22, 2014), aff'd, 603 F. App'x 791 (11th Cir. 2015) (excluding expert testimony where witness "did little more than look at pictures of the container and arrive at a

---

[3] Plaintiffs also cite to Lebron v. Royal Caribbean Cruises, Ltd., NO. 16-24687-CIV-WILLIAMS/SIMONTON, 2018 WL 3583002 (S.D. Fla. July 26, 2018). The Court notes that it cannot identify the excerpt quoted by Plaintiffs anywhere in that opinion.

personal belief that the corner casting may have contributed
to the twist-lock becoming dislodged").

### CONCLUSION

Based on the foregoing, Defendants' <u>Daubert</u> Motion to
Exclude Testimony of Rich Galuk (Doc. 41) is **GRANTED.**

SO ORDERED this *23*rd day of February 2021.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA